[No. 17086-4-I.   Division One.   December 29, 1986.]

RACHEL A. NEVILS, *Appellant,* v. JOHN H. ABERLE, *Respondent.*

*Donald Buckland, Jerry Schumm,* and *Buckland & Schumm,* for appellant.

*Jo Anne Tompkins, Philip J. Vanderhoef,* and *Williams, Lanza, Kastner & Gibbs,* for respondent.

WEBSTER, J.—Plaintiff Rachel A. Nevils appeals from a summary judgment entered in favor of defendant John H. Aberle, M.D. She claims that the trial court erred by ruling that her medical malpractice claim against Aberle was barred by the statute of limitations. We agree with the trial court, and therefore affirm.

### FACTS

This action arose out of two foot surgeries performed by Dr. Aberle on Ms. Nevils in 1978. Aberle performed a bilateral osteotomy in June 1978 and a bone graft on the left foot in November 1978. Because Nevils continued to experience pain following surgery, in spring of 1979 Aberle recommended that she again have her feet reconstructed. He referred her to Dr. Sigvard Hansen, a foot specialist, for a second opinion.

Nevils saw Dr. Hansen in May 1979. Hansen also recommended that Nevils have her feet reconstructed. He told Nevils that she had a condition known as "Morton's foot." In addition, he told her that Dr. Aberle, using an outdated method, had incorrectly set her feet. Nevils stated, in deposition, that at the time of the May visit with Hansen she was convinced that Aberle's treatment of her was substandard and had caused the pain she was then experiencing.

In July 1979 Hansen again examined Nevils. During that visit the two discussed a lawsuit against Aberle. Referring

to that conversation, Nevils stated in deposition:

He said it would be very—he made a comment to me about my feet having been set wrong, and I said—I was in a bad mood because of the pain—I said, "Are you willing to say that in court?"

He said, in effect, it was just very difficult to prove; there was nobody that would ever say that in court, and that, you know, the best thing to do would be to have the surgery, have more surgery.

Nevils did not file a complaint against Aberle until December 29, 1983. She gave two reasons for her delay: (1) because she found the idea of suing a physician repugnant and personally preferred not to bring lawsuits, and (2) because Dr. Hansen had told her she did not have a "suable" case.

Nevils first saw an attorney regarding Aberle's treatment in October 1983—more than 4 years after her visit with Dr. Hansen. According to Nevils, she first understood she might have a case against Aberle after talking with the attorney. Nevils filed this action shortly after the consultation. The court granted Aberle's motion for summary judgment, holding the statute of limitations barred the action. This appeal timely followed.

### SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment involving the application of a statute of limitations should be granted when there is no genuine issue of material fact as to when the relevant statutory limitation period commenced. CR 56(c); *Buxton v. Perry,* 32 Wn. App. 211, 214, 646 P.2d 779 (1982). In reviewing summary judgment, this court engages in the same inquiry as did the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). That inquiry is whether the pleadings, affidavits, depositions, and admissions on file, viewed in the light most favorable to the nonmoving party, lead to a conclusion on which reasonable minds would not differ. *Wilson,* at 437. Summary judgment is improper where different inferences may be drawn from evidentiary facts as to ultimate facts such as knowledge. *Weisert v. University*

*Hosp.*, 44 Wn. App. 167, 721 P.2d 553 (1986).

STATUTE OF LIMITATIONS

Former RCW 4.16.350 (1976),[1] applicable in this case, provides as follows:

Any civil action for damages for injury occurring as a result of health care which is provided after June 25, 1976 against:

(1) A person licensed by this state to provide health care or related services, including, but not limited to, a physician, . . .

. . .

based upon alleged professional negligence shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or *one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission,* whichever period expires later, except that in no event shall an action be commenced more than eight years after said act or omission. Any action not commenced in accordance with this section shall be barred: *Provided,* That the limitations in this section shall not apply to persons under a legal disability as defined in RCW 4.16.190.

(Italics ours.)

Aberle performed the surgery in 1978. Nevils commenced this action 5 years later in December 1983. The statute of limitations issue, therefore, is whether Nevils commenced her action within the 1–year period following "discovery" provided in former RCW 4.16.350. The parties to this suit differ on what one must "discover" in order to commence the 1–year period.

Prior to a 1975 amendment, RCW 4.16.350 provided that a medical malpractice action

shall be commenced within (1) three years from the date of the alleged *wrongful act,* or (2) one year from the time that plaintiff discovers the injury or condition was caused by the *wrongful act,* whichever period of time expires last.

---

[1] In 1986, the Legislature amended RCW 4.16.350. Laws of 1986, ch. 305, § 502. The statutory provisions involved in this appeal, however, remain unchanged.

(Italics ours.) In 1975, the Legislature deleted reference to the "*wrongful*" nature of the defendant's act. Aberle contends that, under the amended version of the statute, the 1-year period commences when the plaintiff discovers or should have discovered the causal relationship between the injury and the act or omission, regardless of knowledge of the tortious quality of that act or omission. Nevils counters that the Legislature did not intend to delete the requirement that a plaintiff must discover that a defendant's actions constitute a breach of duty in order to commence the limitation period. *See Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 598 P.2d 1358 (1979).

*Ohler v. Tacoma Gen. Hosp.*, *supra*, involved the un-amended version of the medical malpractice statute of limitations. The plaintiff in *Ohler*, Lana Ohler, was born prematurely. Because of her prematurity, she was placed in an incubator and given oxygen. Excessive concentrations of oxygen in the incubator resulted in Ohler's blindness. From an early age she knew that the oxygen caused her blindness but believed that it had been properly administered as a necessary treatment for her prematurity. At age 21 she learned the administration of high concentrations of oxygen may not have been necessary and accordingly filed suit. *Ohler*, at 509-10.

The trial court dismissed Ohler's suit, holding that her cause of action accrued when she discovered the cause of her blindness, even if no fault on the tortfeasor's part was then apparent. *Ohler*, at 510. The Washington Supreme Court disagreed. It reasoned that the trial court's formulation of the medical malpractice discovery rule omitted an essential element of a negligence cause of action: respondent's breach of duty (the "wrongful" act). *Ohler*, at 510. The court went on to hold that a plaintiff's claim does not accrue until she discovers or should have discovered all the essential elements of a cause of action, *i.e.*, duty, breach, causation and damages. *Ohler*, at 511. Ohler's case was reversed because material issues of fact remained as to when she discovered, or should have discovered, that the

alleged act constituted a breach of duty.

In *Sahlie v. Johns–Manville Sales Corp.*, 99 Wn.2d 550, 663 P.2d 473 (1983), the Supreme Court clarified its holding in *Ohler*. It held that, for purposes of commencing the 1–year limitation period, a plaintiff need not discover that a given act or omission constitutes a violation of his legal rights. Rather, the relevant period commences when the plaintiff becomes aware, or should have become aware, of the facts comprising the essential elements of the cause of action. *Sahlie*, at 554.

In the present case, we need not analyze the Legislature's intent in removing the word "wrongful" from former RCW 4.16.350. Even if, as Nevils argues, the *Ohler* rule still applies under the amended statute of limitations, summary judgment was proper.

## ANALYSIS OF NEVILS' "DISCOVERY" UNDER OHLER

There is no factual dispute that in May 1979 Nevils discovered or should have discovered the causal connection between Aberle's surgery and her foot problems. It was at that time that Dr. Hansen clearly told her that Aberle had incorrectly set her feet.

Nevils argues that she was unaware that Aberle may have breached any duty he owed her until 1983 when she spoke with an attorney. Her contention is premised on the fact that Dr. Hansen told her in 1979 that she did not have a "suable case".

Two cases, *Wood v. Gibbons*, 38 Wn. App. 343, 685 P.2d 619 (1984) and *Weisert v. University Hosp.*, supra, both of which interpret the 1971 version of RCW 4.16.350, present similar factual situations.

In *Wood*, the defendant physician removed plaintiff's appendix in 1969. Complications set in and additional operations were required. The defendant physician informed plaintiff's physician that he had received a letter from a third physician suggesting the complications may have been a reaction to starch powder on the surgical gloves

used during surgery. Plaintiff's physician relayed the information to plaintiff, but also told him he did not believe the diagnosis was correct. Plaintiff told his parents who in turn contacted an attorney. The attorney investigated the claim and reported to plaintiff that there was nothing to pursue. *Wood,* at 345. In 1980, the plaintiff spoke with yet another physician who told him he suffered from a starch reaction. He brought suit within a year thereafter. *Wood,* at 345.

This court affirmed summary judgment of dismissal based on the statute of limitations. The court held that, although opinion differed as to the cause of his maladies, the plaintiff was aware of the elements making up his cause of action in 1969. He had been told that starch powder was a possible cause of his injury. Further, he had seen a newspaper article concerning a cause of action based on similar facts. The attorney's opinion of the plaintiff's cause of action was held immaterial to the running of the statute of limitations. *Wood,* at 349.

In *Weisert,* this court reversed a summary judgment that had barred a claim based on the expiration of the limitation period. The plaintiff brought an action against a physician who in 1972 had performed heart surgery on her and inadvertently left a portion of a catheter in her atrium. Between 1972 and 1979 she suffered several strokes. A different physician performed surgery on the plaintiff in 1979 and at that time discovered and removed the catheter. It was unclear, however, whether she was then informed that the failure to remove the catheter either constituted a breach of duty or caused the strokes. She contacted an attorney in January 1980. Suit was filed in 1982. At some point after retaining counsel, it became apparent that the plaintiff knew, or should have known, about causation and the defendant's breach of duty. The evidence presented did not, however, clearly establish at what point that occurred. Summary judgment was therefore ruled inappropriate.

In the instant case, Nevils equates Dr. Hansen's telling her she had no "suable" case with him telling her that there was no breach of duty by Aberle. Her case, however, is

similar to *Wood.* She may not have understood she had a legal cause of action in 1979, but there is no question that she had discovered the elements of her cause at that time. *See Sahlie v. Johns–Manville Sales Corp., supra.* Her own deposition indicates that she was aware of the underlying facts. In 1979, Dr. Hansen told her that Dr. Aberle had incorrectly set her feet and had employed an outdated method in doing so. She had experienced abnormal amounts of pain from the point of surgery onward. In deposition, she testified that in May 1979 she was "pretty convinced" that the pain in her feet was related to Aberle's surgery, that she thought Aberle had "screwed up," and that she knew Aberle had acted below the standard of care for a physician in his specialty. In July 1979, she even asked Hansen to testify in court as to Aberle's inappropriate care. Factual questions, such as those presented in *Weisert,* are not present here. Consequently, even under the *Ohler* analysis, Nevils' claim is barred by the statute of limitations.

Affirm.

SWANSON and GROSSE, JJ., concur.

Review denied by Supreme Court March 31, 1987.