# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LOIS K. CHAMPION, | ) | NO. 70933-0-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| LOWE'S HIW, INC., | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: June 30, 2014 |
| | ) | |

LAU, J. — Lois Champion alleges injuries sustained when she tripped and fell on a pallet lifter parked in the merchandise aisle of a Lowe's store. She appeals the summary judgment dismissal of her personal injury lawsuit. Because the evidence viewed in the light most favorable to Champion presents genuine material fact issues on whether Lowe's should have anticipated the harm to Champion despite the pallet's obvious hazard[1] and on what caused her to fall, we reverse and remand for trial.

## FACTS

The record viewed in the light most favorable to Champion establishes the following events.

---

[1] We assume, without deciding, the pallet lifter constitutes an obvious hazard.

Eighty-five-year-old Lois Champion went to the Everett Lowe's store to shop for a toilet. A Lowe's employee walked Champion to the plumbing aisle where he pointed out the toilets displayed on an overhead shelf. As Champion walked down the aisle looking at the toilets, she tripped and fell on a pallet lifter placed in the aisle. She fell face-forward onto the pallet lifter and sustained head, knee, and foot injuries.

Customers Cecilio Di Gino and Shelby Eaton witnessed portions of the incident. Di Gino testified at his deposition that Champion fell while looking up at merchandise a Lowe's employee pointed out to her. The employee later apologized to Champion.

> Q. So tell me what you recall from the moment you go into the Lowe's store, what you did to start shopping.
> A. We just went walking up and down the aisles looking at stuff. Then we got over to the area where the pallet was on the floor, and I remember telling Shelby to watch out for the pallet. She's not the most observant person when it comes to things. I made a comment that it was not a very bright place to leave something like that.
> We were looking up. A salesperson and Ms. Champion came, and—we moved back. They came in front. The guy was pointing, you know, We have this, we have that, we have this, you know, yada, yada, yada, pointing. She was looking up.
> Q. When you say "she," you mean Ms. Champion?
> A. Ms. Champion was looking up. The guy was looking up. He then slid back just a couple inches, almost like behind her, and then Ms. Champion hit the pallet and went over.
> Then he kept saying, "I'm sorry, I'm sorry. I should have told you it was there." I believe at one point he even said he didn't see it, but—there was just so much going on at that point, but I know he kept apologizing.

Di Gino acknowledged that he did not see Champion's feet at the moment she fell. But he remembered what happened immediately after she fell:

> Q. And when you first saw her, when you turned to the incident, what did you see? Where was she lying?
> A. Face down on the pallet.
> Q. And was she fully on the pallet, you know, like, square on the pallet, or was part of her body on the—

A. Part of her body was off.

Q. And so would that have been the right-hand part of her body partially off the pallet and her left side on the pallet?

A. It would have been her right-hand on the pallet, and I believe her left-hand was, like, slightly off, but not much. It was, like almost like she was all the way—from waist over? She was like, boom, like that. It was something like this (indicating).

Q. Sure so then her left-hand, left part of her body that was partially on the floor, that would have been between the pallet and the left shelf?

A. Yeah.

Eaton testified by deposition that Champion "was kind of looking up and—as she was walking along." She also described what she saw immediately after Champion's fall:

Q. All right. How did you first become aware that an incident had first occurred involving Ms. Champion?

A. So, I heard a noise of some kind.

Q. Yes.

A. And I was—I was not facing her at that point. I don't know if I had my side to her or my back to her—I'm not sure—but I know I had to turn to actually see where the noise was coming from.

Q. And when you turned, what did you see?

A. I saw her lying half—kind of almost half on the pallet and half off the pallet, and she was face-down. Maybe half isn't quite right. Maybe more like her leg, foot and leg, were on the pallet and the rest of her was off the pallet on the concrete.

She testified about the pallet: "It was down low, and so when I was looking down the aisle from far away, I tended to look kind of at my height, and so I didn't really notice the pallet at first."

Champion remembered she fell while looking up at the merchandise but not what caused her to fall:

So there were the toilets (indicating), on the very top shelf, so I'm up there looking, looking, looking, and eventually I think I had made a selection. Anyway I turned around, and I didn't realize what happened, but afterwards I saw a big bruise—later on at home, I saw a big bruise across the top of my right foot.

I don't really remember what happened, but I evidently fell.

After Champion regained consciousness, she found herself in a "twisted position," lying on her stomach and head.

Champion sued Lowe's for negligence, alleging that she suffered injuries after she was "caused to come in contact with a stationary, unattended, pallet jack or other type of store equipment." Lowe's moved for summary judgment, arguing (1) the hazard that allegedly caused Champion's injury was obvious as a matter of law and (2) Champion submitted no evidence on the element of causation. The court granted the motion. It ruled, "The condition complained of by Plaintiff qualifies under the law and the undisputed facts as an open and obvious condition for which Lowe's owed no duty to warn or protect." It also ruled, "Plaintiff has failed in her burden of proof with regard to the negligence element of causation." Champion appeals.

## ANALYSIS

### Order Striking Summary Judgment Materials

We first address the trial court's order striking certain materials Champion submitted in opposition to Lowe's summary judgment motion. We review this issue de novo. Rice v. Offshore Sys., Inc., 167 Wn. App. 77, 85, 272 P.3d 865 (2012).

The record shows that the trial court struck 12 sentences contained in Champion's summary judgment response brief. Lowe's claimed various grounds warranted the relief—speculation, inadmissible hearsay, expert opinion, no personal knowledge, and conclusory statements. We conclude none of these grounds supports the court's order to strike legitimate arguments by counsel about the evidence presented on summary judgment. Lowe's mistakenly asserted grounds to strike that

-4-

generally apply to summary judgment evidence, not to arguments of counsel in a brief.[2]

See CR 56(e).

The trial court also struck the entire Di Gino declaration.[3] Lowe's relied on

Marshall v. AC&S Inc., 56 Wn. App. 181, 185, 782 P.2d 1107 (1989), to argue that

Di Gino's declaration improperly contradicted his unambiguous deposition testimony.

As a general rule, a party cannot create a genuine issue of material fact "'with an

affidavit that merely contradicts, without explanation, previously given clear testimony.'"

Marshall, 56 Wn. App. at 185 (quoting Van T. Junkins & Assocs., Inc. v. United States

Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984)).  This rule is tempered by the well-

settled rule that all doubts must be resolved in favor of allowing the case to go to trial.

The court should scrutinize the two versions and reject the second one only if a clear

and material contradiction exists.  Sun Mountain Prods., Inc., v. Pierre, 84 Wn. App.

608, 617-18, 929 P.2d 494 (1997).  Lowe's correctly abandons its reliance on Marshall

on appeal.  Di Gino testified in his declaration that he saw Champion "come in contact

with a pallet lifter."  He later acknowledged in his deposition that he did not see

Champion's feet at the moment she fell.  His deposition and declaration testimony

---

[2] In Cameron v. Murray, 151 Wn. App. 646, 658, 214 P.3d 150 (2009), this court explained, "[M]aterials submitted to the trial court in connection with a motion for summary judgment cannot actually be stricken from consideration as is true of evidence that is removed from consideration by a jury; they remain in the record to be considered on appeal.  Thus, it is misleading to denominate as a 'motion to strike' what is actually an objection to the admissibility of evidence that could have been preserved in a reply brief rather than by a separate motion."  We thus treat Lowe's motion to strike for what it is in substance—an objection to the evidence's admissibility.

[3] We also note the trial court mistakenly struck the entire declaration instead of the objected-to portions.

demonstrate no clear, material contradiction. The court improperly struck the declaration.

### Order Granting Summary Judgment

Champion assigns error to the trial court's order granting Lowe's summary judgment on liability. For the reasons discussed below, we reverse and remand for trial.

On appeal from an order granting summary judgment, we review de novo whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "[T]he moving party bears the initial burden of showing the absence of an issue of material fact." Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

"The elements of a negligence cause of action are the existence of a duty to the plaintiff, breach of the duty, and injury to plaintiff proximately caused by the breach." Hertog, ex rel. S.A.H. v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Proof of proximate causation requires a showing of cause in fact and legal causation. Ang v. Martin, 154 Wn.2d 477, 482, 114 P.3d 637 (2005). "Cause in fact is usually a question for the trier of fact and is generally not susceptible to summary judgment." Martini v. Post, 178 Wn. App. 153, 164, 313 P.3d 473 (2013). "Negligence and proximate cause are ordinarily factual issues, precluding summary judgment." 4 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 56, at 418 (6th ed. 2013). In

ruling on a summary judgment motion, the court must resolve any doubts on the existence of a genuine issue of material fact against the moving party. Ventures Nw. Ltd. P'ship v. State, 81 Wn. App. 353, 361, 914 P.2d 1180 (1996).

"Under common law premises liability, a landowner owes differing duties to entrants onto land depending on the entrant's status as a trespasser, a licensee, or an invitee." Afoa v. Port of Seattle, 176 Wn.2d 460, 467, 296 P.3d 800 (2013). Lowe's acknowledges that Champion was a business invitee at the time of her alleged injury. A possessor is liable for harm to business invitees if it (1) knows of, or by the exercise of reasonable care would discover, a condition presenting an unreasonable risk of harm; (2) should expect that invitees would not discover the danger or would fail to protect themselves from it; and (3) fails to exercise reasonable care to protect invitees against the danger. Iwai v. State, 129 Wn.2d 84, 93-94, 915 P.2d 1089 (1996).

If the hazard is obvious or is known to the invitee, the possessor is not liable. Iwai, 129 Wn.2d at 94. But "an invitee's awareness of a particular dangerous condition does not necessarily preclude landowner liability." McDonald v. Cove to Clover, 180 Wn. App. 1, 321 P.3d 259, 261 (2014). Liability exists where the possessor "'should anticipate the harm despite such knowledge or obviousness.'" Iwai, 129 Wn.2d at 94 (quoting RESTATEMENT (SECOND) OF TORTS § 343A (1965)). The Restatement explains:

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.

RESTATEMENT (SECOND) OF TORTS § 343A cmt. f (1965).

Lowe's contends the pallet on which Champion allegedly tripped was obvious as a matter of law. Even if we assume without deciding that the pallet constitutes an obvious hazard, the record demonstrates genuine issues of material fact remain as to whether Lowe's "'should anticipate the harm despite such . . . obviousness.'" Iwai, 129 Wn.2d at 94 (quoting RESTATEMENT (SECOND) OF TORTS § 343A (1965)). The record evidence and inferences from the facts viewed in the light most favorable to Champion show she fell while walking down the aisle and looking up at merchandise called to her attention by a Lowe's employee. The pallet was lying flat on the floor, well below eye level. Here, reasonable minds can differ on whether Lowe's should have anticipated the harm to Champion posed by the pallet in spite of its obviousness. RESTATEMENT (SECOND) OF TORTS § 343A cmt. f (1965).[4] The resolution of that fact-based inquiry is for a jury. The trial court improperly dismissed Champion's lawsuit on summary judgment.

Lowe's also relies on Suriano v. Sears, Roebuck & Co., 117 Wn. App. 819, 72 P.3d 1097 (2003). Its reliance on Suriano is misplaced. There, Division Three of this court concluded that Restatement (Second) of Torts § 343A (1965) applies in the "retail store context." Suriano, 117 Wn. App. at 826. It then upheld a jury instruction that allowed the plaintiff to argue that the defendant department store was liable notwithstanding its theory that the advertising sign on which she allegedly tripped was

---

[4] To make this point, the Restatement provides an example similar to the facts in the present case: "The A Department Store has a weighing scale protruding into one of its aisles, which is visible and quite obvious to anyone who looks. Behind and about the scale it displays goods to attract customers. B, a customer, passing through the aisle, is intent on looking at the displayed goods. B does not discover the scale, stumbles over it, and is injured. A is subject to liability to B." RESTATEMENT (SECOND) OF TORTS § 343A cmt. f, illus. 2 (1965).

an obvious hazard. Suriano, 117 Wn. App. at 829 ("The instruction was an accurate version of Restatement (Second), supra, § 343A(1), not confusing, and allowed Ms. Suriano to argue Sears should have foreseen that an inattentive or disabled customer would careen into [the sign]."). As in Suriano, here, whether Lowe's should have foreseen that Champion's inattention would cause her to trip and fall onto the pallet is a jury question.

Lowe's also argues that Champion "cannot meet her burden of proof under the proximate cause element of her negligence claim." Resp't's Br. at 37. It asserts that neither Champion nor her two witnesses provided any evidence of what caused Champion's fall. Lowe's argues that the undisputed evidence on this point indicates Champion's lack of memory and that the witnesses failed to see her fall.

Lowe's ignores the circumstantial evidence and reasonable inferences on the cause of Champion's fall. The record viewed in the light most favorable to Champion supports a reasonable inference that she tripped on the pallet. Lowe's claims she tripped on her own feet. Di Gino acknowledged that he did not "see how [Champion] was walking when she fell." But he testified that he saw Champion lying "[f]ace down on the pallet." Eaton also acknowledged she did not see Champion at the moment she fell. She testified, however, that she immediately turned and saw Champion lying "face-down." She recalled that Champion's "foot and leg . . . were on the pallet and the rest of her was off the pallet on the concrete." Di Gino recalled that Champion "stayed on the pallet" until a bystander helped her into a chair. He testified, "I don't think we took her off the pallet right away." Finally, Champion testified that she sustained a "big bruise across the top of [her] right foot," a "swollen and blue" knee, and a "brain concussion."

Based on Champion's proximity to the pallet when she fell, the nature and location of her injuries, and her attention to the merchandise overhead as she walked, a reasonable jury could conclude that Champion tripped on the pallet. On the other hand, it could conclude she tripped on her own feet, as Lowe's claims.

Lowe's cites Little v. Countrywood Homes, Inc., 132 Wn. App. 777, 133 P.3d 944 (2006), and Moore v. Hagge, 158 Wn. App. 137, 241 P.3d 787 (2010), but neither case controls. In Little, this court affirmed the summary judgment dismissal of a negligence action because the plaintiff had no memory of his jobsite accident and there were no eyewitnesses. We explained, "Without evidence to explain how his accident occurred, Little could not establish proximate cause and could not withstand summary judgment." Little, 132 Wn. App. at 784. In Moore, a pedestrian could not remember being struck by a vehicle on a city street, and nobody saw him immediately before the collision. We affirmed the summary judgment dismissal of the pedestrian's unsafe road design suit against the city, explaining that the evidence "showed, at best, that the [pedestrian] might not have been injured if the City had installed additional precautions." Moore, 158 Wn. App. at 158. In both cases, summary judgment was appropriate because a reasonable trier of fact could only speculate as to causation. Unlike in Little and Moore, Champion presented sufficient evidence, summarized above, on causation in spite of her own lack of memory.

Attorney Fees and Costs on Appeal

Champion requests attorney fees and costs pursuant to RAP 18.1 and 18.9. RAP 18.9 provides in relevant part:

> The appellate court on its own initiative or on motion of a party may order a party or counsel . . . who uses these rules for the purpose of delay, files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court.

We perceive no basis for an award of attorney fees under RAP 18.9. Lowe's requests "attorneys' fees and costs incurred pursuant to RAP 14.1, RAP 14.2, and RAP 14.3." Resp't's Br. at 43. Given our disposition, we deny Lowe's request.

## CONCLUSION

Because genuine material fact issues remain on whether Lowe's should have anticipated the harm to Champion despite an obvious hazard and on what caused her to fall, we reverse the summary judgment order and remand for trial.

WE CONCUR: